COURT OF APPEALS
DECISION
DATED AND FILED

July 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. 2023AP2376-CR

STATE OF WISCONSIN

Cir. Ct. No. 2020CF368

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CALEB A. GOETZEN,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Wood County: NICHOLAS J. BRAZEAU, JR., Judge. *Affirmed in part and reversed in part*.

Before Kloppenburg, P.J., Blanchard, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Caleb Goetzen appeals a judgment of conviction on two counts of battery by a prisoner. The issue on appeal concerns whether the

evidence at trial is sufficient to support Goetzen's convictions. We conclude that the evidence is sufficient on one count but insufficient on the other count. Therefore, we affirm the judgment in part and reverse the judgment in part.

¶2 Both counts arose from one incident involving interactions between Goetzen and three corrections officers. Briefly described, trial testimony established the following. Goetzen was being held at the Wood County Jail. Two officers were speaking with Goetzen, who was in a holding cell, when he became loud and agitated and punched a wall. Goetzen was standing at the time, and the officers restrained him against a wall. The officers then moved Goetzen towards a nearby bunk. At this point, a third officer arrived in the cell and assisted in restraining Goetzen on the bunk. During the interaction, one officer was kicked by Goetzen and another officer injured his toe. Goetzen was charged with two counts of battery by a prisoner. Further evidence for each count will be described below.

¶3 The jury was instructed that one element of each battery offense which the State had to prove beyond a reasonable doubt is that Goetzen "intentionally caused bodily harm to the victim named in each count." The jury was further instructed that "'[i]ntentionally' means that the defendant had the mental purpose to cause bodily harm to another human being or was aware that his conduct was practically certain to cause bodily harm to another human being." The jury was also instructed that "'[b]odily harm' means physical pain or injury, illness, or any impairment of physical condition." In light of this last instruction, for intent to be proven, Goetzen need only to have been aware of the practical certainty of causing even the slightest level of pain or physical "impairment," and not of causing any more severe form of bodily harm.

2

¶4      Goetzen argues that the evidence was insufficient as to intent on both counts. We affirm the verdict unless the evidence, viewed most favorably to the State and the conviction, is so insufficient in probative value and force that no reasonable trier of fact could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶5      The State appears to concede that the evidence was insufficient to show that Goetzen had a mental purpose to cause bodily harm to the officers. Instead, the focus of our analysis is on whether the State proved that, in the words of the instruction, Goetzen "was aware that his conduct was practically certain to cause bodily harm to another human being."

¶6      On appeal, Goetzen argues, as to both counts, that the evidence was insufficient to show awareness that his conduct was practically certain to cause bodily harm to another. At most, he argues, it can be inferred that he was aware that there "may be a risk" of harm from his conduct, but "there is no certainty."

¶7      The State argues that the evidence supports a finding of Goetzen's awareness of practical certainty of bodily harm on each count. However, the State's argument does not rely on any direct evidence that Goetzen had a subjective awareness about possible bodily harm that his conduct might cause to either of the two allegedly battered officers. For example, there was no statement by Goetzen during the incident that expressed a belief that his conduct was practically certain to cause bodily harm. Instead, if such awareness can be inferred, it must be from circumstantial evidence, such as from the specific facts of Goetzen's conduct, together with the factfinder's own understanding and experience of what awareness a person in such circumstances may have about the possible results of that conduct.

¶8      When considering the question of Goetzen's awareness, neither party analyzes the two battery counts separately.  In its argument, the State describes Goetzen's conduct in broad terms, including stating that Goetzen "fought" with the officers, but without focusing on Goetzen's specific conduct at the time the alleged harms to the officers occurred.  Although this event can be described as one incident occurring over a short period of time, the record is clear that the bodily harms alleged to have occurred to the officers were separated in time, and that Goetzen was not engaged in identical conduct at each of those separate times.  Therefore, the sufficiency of evidence in support of each battery count must be analyzed separately.

¶9      With that background, we turn to the individual battery counts.  The first count related to Goetzen kicking the thigh of one of the officers who initially restrained him.  One of those officers testified that, as Goetzen was being moved from the wall towards the bunk, "he kept flailing his legs," while "still standing kind of like leaning towards the bunk and then kicking with his legs when he started to go towards the bunk -- onto the bunk."  The other officer testified that during that period, while Goetzen was still standing, the officer "felt a kick or not even a kick, but felt someone striking my -- inside of my thigh approximately three times with what I believe to be a shin or a foot," and that this caused him pain.

¶10      The conduct by Goetzen that caused the bodily harm to the officer was the flailing of his leg.  We conclude that the jury could reasonably infer that Goetzen was aware that such a movement, in the close quarters of the holding cell under the circumstances here, and in a way that made contact with one of the officers, was practically certain to cause bodily harm, at least in the form of pain.  Therefore, we reject Goetzen's insufficiency argument as to this count.

4

¶11     The second count related to the officer who arrived later to assist the first two officers. This officer testified that, when he arrived at the holding cell, Goetzen was already on the bunk, and the officer ran to hold Goetzen's left arm. He described Goetzen as "trying to get out of our hold" and "moving around trying to resist," but also testified that Goetzen was not actively trying to hit or punch anyone. As to the bodily harm, the officer testified: "When I went in to restrain [Goetzen's] left arm, I pushed up on my right foot on the ball of my foot, and somehow I dug in with my toes and then I dislocated my toe." [id] But, according to the officer's testimony, Goetzen did not make contact with the officer's foot and did not attempt to do anything to the officer's foot. In sum, the testimony shows that Goetzen's conduct when the bodily harm to this officer occurred was Goetzen's resistance to being restrained by the officers, by moving about and exerting force against them.

¶12     We conclude that, as to this count, it was not reasonable to infer that Goetzen was aware that his conduct was practically certain to cause bodily harm to the officer. We agree with Goetzen that, at most, it can reasonably be inferred that he was aware of the *potential* for bodily harm, but not that he was aware of a *practical certainty* of causing bodily harm. Therefore, we conclude that the evidence was insufficient on this count.

       *By the Court*.—Judgment affirmed in part and reversed in part.

       This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.

5